UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ALEXEY LEONICHEV,

                         Plaintiff,

   - against -

ALEXANDER ROBERT KNOLL, *et al.*,

                         Defendants.
-------------------------------------------------------------x

**ORDER OF DISMISSAL**

No. 25-CV-4959 (CS)

## I.    BACKGROUND

Plaintiff initiated this action by filing his complaint on June 10, 2025. (ECF No. 1.) It was assigned to the undersigned on June 13, 2025. (*See* Docket Entry dated June 13, 2025.) On June 17, 2025, Plaintiff submitted a document titled "Exparte Confidential Notice to Clerk," challenging the assignment of the undersigned and Magistrate Judge Andrew Krause to the action, as he stated he never gave his consent for the assignment and had demanded a jury trial. (*See* ECF No. 6.) He also objected to the changing of the docket number from 1:25-CV-4959 to 7:25-CV-4959. (*See id.*) On June 23, 2025, the Court explained to Plaintiff that the assignment of a District Judge and Magistrate Judge does not undermine or in any way affect a party's right to a jury trial; that there must be a judge to preside; and that the "1" in the case number was changed to "7" to indicate that the case is in White Plains rather than Manhattan. (ECF No. 7.)

Nevertheless, the following day, Plaintiff filed a "2nd Demand for a Jury Trial" in which he again requested that the assigned judges be removed from the docket. (ECF No. 8.) On July 2, 2025, Plaintiff filed a document titled "FRCP Rule 5.1 Notice of Constitutional Challenge to Rule 39(a)(2) FRCP and Request of US Attorney General Intervention," addressed to the U.S. Attorney General, challenging the constitutionality of Federal Rule of Civil Procedure 39(a)(2)

and stating that there is no law that allows me to "enter any order in Jury Trial," or "to preside in Jury Trial." (ECF No. 25 at 1.)

On July 7, 2025, in accordance with my Individual Rules of Practice, Defendants filed a pre-motion letter outlining the basis for their proposed motion to dismiss. (ECF No. 22.) That same day, I granted the Defendants' motion for a conference, setting the conference for July 31, 2025, and ordering Plaintiff to respond to Defendants' letter by July 24, 2025. (ECF No. 23.) The next day, Plaintiff attempted to file multiple proposed clerk's certificates of default and accompanying declarations, stating Defendants had failed to respond to the Complaint by July 7. (*See* ECF Nos. 26-31.) The Court promptly explained to Plaintiff that Defendants were not in default; rather, they had filed a pre-motion letter on the date their response to the Complaint was due, which pursuant to item 2.A of my Individual Rules of Practice stays their deadline to move or answer. (ECF No. 32.) Despite this explanation, Plaintiff continued to file more proposed certificates of default and declarations. (*See* ECF Nos. 35-40.) The Court reiterated that Defendants were not in default and ordered Plaintiff not to file any further documents seeking a default pending the upcoming conference. (ECF No. 42.)

On July 9, 2025, Plaintiff filed a "2nd Notice of Judicial disqualification" stating, among other things, that "Judge Cathy Seibel performed unauthorized intrusion into Docket 7:25-CV-04959-CS" and "brutally obliterated Amendment VII of US Constitution" by entering orders in the case in which Plaintiff had demanded a jury trial. (ECF No. 41.) He filed the same document again the next day, (*see* ECF No. 44), along with a "Complaint of Judicial Misconduct or Disability" on the same grounds, (*see* ECF No. 46). He reiterated his complaints relating to a jury trial and Defendants' alleged default on July 11, 2025, at which time he also accused a

paralegal of impersonating me in the Electronic Case Filing ("ECF") system, thus questioning the authenticity of my orders. (*See* ECF No. 45.)

On July 15, 2025, Plaintiff filed a document requesting that the Clerk remove from the docket ECF Nos. 23, 32, and 42, which he referred to as "false entries." (*See* ECF No. 47.) Plaintiff argued that these entries, which were orders entered by me, were false because they did not contain the filer name or the Electronic Document Stamp verifying their authenticity. (*See id.*) The next day, he again requested that the Clerk remove "false" entries assigning the case to me and to Magistrate Judge Krause. (ECF No. 48.) He also stated that the Clerk's failure to issue the requested certificates of default against Defendants constituted a crime. (*See id.*) Plaintiff continued to raise this issue in his next two submissions, and he began claiming that filings by defense counsel were also false. (*See* ECF Nos. 51, 52.)

On July 17, 2025, the Court entered an order clarifying these issues. (*See* ECF No. 50.) Specifically, I informed Plaintiff that I had made no decision as to whether Plaintiff had a right to a jury trial but merely explained that every case requires a presiding judge; that Defendants had not defaulted; that ECF Nos. 23, 32, and 42 were orders entered by me with which the parties were obligated to comply; that entries placed on the docket by the Clerk or text orders placed on the docket by the Court do not receive an "Electronic Document Stamp" but are nevertheless legitimate; and that I would clarify these issues further at the July 31, 2025 conference. (*Id.*) I also ordered Plaintiff not to submit anything further relating to these issues. (*Id.*)

Nevertheless, on July 21, 2025, Plaintiff filed yet another request to remove allegedly false docket entries, including my most recent order. (ECF No. 53.) In his request, Plaintiff stated that "Judge Cathy Seibel doesn't have and never had any jurisdictional authority" because "all power and jurisdictional authority belong to Jury." (*Id.*) He again raised the same issues as

3

his earlier submissions.  (*See id.*)  On July 28, 2025, Plaintiff filed an "Affidavit of judicial insurrection against US Constitution," alleging that the ECF rules and system constitute a "fraudulent criminal scheme to defraud"; accusing court employees of committing crimes; disputing defense counsel's authority to represent defendants; and again challenging the authenticity of my orders.  (ECF No. 54.)

On July 31, 2025, the Court held a pre-motion conference.  Plaintiff failed to appear. (*See* Minute Entry dated July 31, 2025.)  While Plaintiff was supposed to be at the conference, he submitted another letter to the *Pro Se* inbox that again raised the same issues as his prior submissions.  Following the conference, the Court entered an order directing Plaintiff not to make further submissions regarding any of the issues presented in his previous submissions, including but not limited to:  jury trial; the assignment of the undersigned or the designation of Magistrate Judge Krause; the certificates of default; the law office of Manson & McCarthy; defense counsel's authority to appear as counsel; the authenticity of orders on the docket; and accusations of criminal conduct.  (ECF No. 55 (the "Order").)  The Court warned Plaintiff that further violations could result in sanctions, which could include a monetary penalty, responsibility for the reasonable expenses of defense counsel, or even dismissal.  (*Id.* at 2.)  The Court also warned Plaintiff that he could face such sanctions if he failed to appear at the rescheduled pre-motion conference.  (*Id.*)  It further stated that it would address at the rescheduled conference any concerns Plaintiff had.  (*Id.*)  Almost immediately following the entry of the Order, Plaintiff filed a request to remove "impersonated Judge Cathy Seibel" and "false" docket entry No. 55.  (ECF No. 56.)

The Court held the rescheduled pre-motion conference on September 3, 2025.  Plaintiff again failed to appear.  (*See* Minute Entry dated Sept. 3, 2025.)  Instead, Plaintiff filed another

4

"Affidavit of Judicial Insurrection" against the Constitution and "Notice[s] of Judicial Disqualification." (ECF Nos. 58-60.) Because Plaintiff failed to appear, the Court ordered him to pay defense counsel $100 to compensate for his reasonable expenses in preparing for and attending the two conferences. (ECF No. 57 at 1-2.) Additionally, because Plaintiff violated the Order through his submission at ECF No. 56, the Court ordered Plaintiff to pay a monetary penalty of $50 to the Clerk of Court. (*Id.* at 2.) The Court warned Plaintiff that if he continued to violate my orders, harsher sanctions would be imposed. (*Id.* at 3.)

Following this order, Plaintiff filed a request to remove the same docket entries he had previously alleged were "false," as well as my order dated September 3, 2025. (ECF No. 62.) Unsurprisingly, Plaintiff again argued that I did not have jurisdiction because he had requested a jury trial, questioned the authenticity of my orders, accused the Clerk of committing crimes by failing to issue the requested certificates of default, disputed defense counsel's authority to represent Defendants, and accused him of entering orders that I entered. (*Id.*) He also raised these issues in a separate email on which he copied my courtroom deputy, and attached what he believes is proof that defense counsel's firm is fake, which document was filed on the docket the next day. (*See* ECF No. 61.)

On September 10, 2025, the Court imposed additional monetary sanctions on Plaintiff, as his submissions at ECF Nos. 58, 59, 60, 61, and 62 violated the Order. (*See* ECF No. 63.) Because two of these submissions came after my warning of harsher sanctions, I increased the monetary penalty for each of these violations to $100. (*Id.* at 2.) At that time, I warned Plaintiff that if continued to violate the Order, his case may be dismissed. (*Id.*)

Shortly after that order was docketed, Plaintiff filed two more letters: the first requesting the Clerk to remove "false" docket entries including my most recent order, (ECF No. 63), which

5

he claims was issued either by me "but most probably by CRIMINAL NAMED MML," an apparent reference to a Clerk's Office docketing employee, (*see* ECF No. 64), and the second asking if I disagreed with the Constitution and once again stating my orders were false, (*see* ECF No. 65). These letters also violate the Order.

## II.     DISCUSSION

"All litigants, including *pro ses,* have an obligation to comply with court orders, and failure to comply may result in sanctions, including dismissal with prejudice." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009).[1] Nevertheless, although "district courts generally have broad discretion with respect to the imposition of sanctions," the Second Circuit has "recognized that dismissal with prejudice is a harsh remedy to be used only in extreme situations, and then only when a court finds willfulness, bad faith, or any fault by the non-compliant litigant." *Koehl v. Bernstein*, 740 F.3d 860, 862 (2d Cir. 2014).

"Before dismissing a case under Rule 41(b), the district court must weigh five factors," including

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Shomo v. Eckert*, 345 F.R.D. 570, 583 (W.D.N.Y. 2024), *reconsideration denied*, 755 F. Supp. 3d 344 (W.D.N.Y. 2024), *appeal filed sub nom. Shomo v. State of N.Y.*, No. 24-818 (2d Cir. Mar.

---

[1] Unless otherwise indicated, all case quotations omit internal citations, quotation marks, alterations and footnotes. The Court will send Plaintiff copies of any unpublished decisions cited in this ruling.

6

29, 2024); *see Lucas v. Miles*, 84 F.3d 532, 534-35 (2d Cir. 1996). "No single factor is generally dispositive." *Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014).

Weighing the factors above, the Courts finds that circumstances are sufficiently extreme to warrant dismissal.

Beginning with the first factor, although the Court previously sanctioned Plaintiff for violating the Order, which was entered on July 31, 2025, (*see* ECF No. 55), Plaintiff was first ordered on July 17, 2025 not to make any further submissions regarding the issues he had already raised in this case, (*see* ECF No. 50). Sixty-two days have passed since that date. Although the Second Circuit has, in another context, found a delay of thirty-nine days to be insignificant, *see Lucas*, 84 F.3d at 535, "[t]his does not . . . mean that the factor necessarily weighs against [dismissal]," *Funk v. Belneftekhim*, 861 F.3d 354, 368 (2d Cir. 2017) (although three month period of noncompliance was not inordinately long, imposition of sanctions proper because circumstances indicated defendants never intended to comply with the court's orders). As set forth above, Plaintiff's noncompliance and dilatory behavior has lasted for almost the entire duration of the case and involves approximately thirty-five submissions in only two months. Considering the record as a whole, I find the duration of Plaintiff's noncompliance is significant and weighs in favor of dismissal. *See Houghtaling v. Eaton*, No. 14-CV-6416, 2021 WL 6845540, at *6 (W.D.N.Y. Sept. 13, 2021) (finding duration of failure to comply significant when considering the record as a whole and the plaintiff's other dilatory tactics), *report and recommendation adopted*, 2022 WL 167538 (W.D.N.Y. Jan. 18, 2022), *aff'd*, No. 22-638, 2023 WL 113840 (2d Cir. Jan. 5, 2023) (summary order); *Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc.*, No. 99-CV-9311, 2000 WL 1677984, at *2 (S.D.N.Y. Nov. 8,

7

2000) (acknowledging that there is no "magic number" with respect to duration and finding case presented extreme circumstances that warranted dismissal after delay of four months).

Second, Plaintiff was on notice that failure to comply with my orders would result in dismissal. He was first warned about the possibility of dismissal on July 31, 2025. (*See* ECF No. 55.) Plaintiff was then warned again on September 10, 2025 that if he continued to violate the Order by raising the same issues, his case may be dismissed. (*See* ECF No. 63.) After receiving this warning, Plaintiff almost immediately violated the Order again. Thus, this factor weighs in favor of dismissal. *See Koehl*, 740 F.3d at 862-63 (finding no abuse of discretion in district court's decision to dismiss where *pro se* plaintiff was warned that continued conduct could lead to dismissal but persisted in it).

Third, Defendants have already been prejudiced, as Plaintiff's failure to appear at two pre-motion conferences has wasted their resources and delayed the filing of their motion to dismiss, which they proposed over two months ago on July 7, 2025. (*See* ECF No. 22.) *See Lopa v. Safeguard Props. Mgmt., LLC*, No. 14-CV-3324, 2018 WL 3019875, at *2 (E.D.N.Y. June 18, 2018) (failure to comply with orders to appear at status conferences prejudiced defendants). Nevertheless, despite this delay, Defendants can still make their motion to dismiss, and other factors courts have found to be prejudicial are not present here. *See, e.g.*, *Houghtaling*, 2021 WL 6845540, at *7 (defendants prejudiced where delay and efforts to hamper discovery process forced defendants to incur attorney's fees for seeking discovery responses and making motions to enforce orders); *Davis v. City of N.Y.*, No. 17-CV-3863, 2019 WL 7842400, at *7 (E.D.N.Y. Dec. 3, 2019) (prejudice presumed where plaintiff has become inaccessible for months at a time), *report and recommendation adopted*, 2020 WL 103525 (E.D.N.Y. Jan. 9, 2020); *Feurtado v. City of N.Y.*, 225 F.R.D. 474, 480 (S.D.N.Y. 2004) (finding defendants

prejudiced by plaintiff's failure to comply with orders where delay prevented them from receiving materials needed to allow case to proceed to trial). But "lack of prejudice should not be given significant weight in the overall analysis." *United States v. M/Y Amadea*, No. 23-CV-9304, 2025 WL 754124, at *15 (S.D.N.Y. Mar. 10, 2025) (court would impose case-dispositive sanctions under Rule 37 pursuant to substantially similar five-factor test even if opposing party had not suffered prejudice). Thus, that this factor does not weigh strongly in favor of dismissal does not alter my decision.

The fourth factor – balancing the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard – likewise weighs in favor of dismissal. Although the case was initiated only three months ago and has not yet proceeded beyond the pleadings stage, the docket already has sixty-five entries as a result of Plaintiff's repetitive, irrelevant, and meritless filings, as outlined above. *See Houghtaling*, 2021 WL 6845540, at *7 (finding fourth factor weighed in favor of dismissal where the plaintiff "swamped the Court with irrelevant or obstructionist filings"). Further, the Court indicated that Plaintiff would have an opportunity to be heard and planned to address his concerns at the two pre-motion conferences in this case, but Plaintiff failed to appear. Plaintiff has also repeatedly demonstrated his lack of respect for the undersigned and the judicial process, resorting to repeatedly questioning the undersigned's authority, the authenticity of the court's orders, and the constitutionality of the Court's rules. Overall, "Plaintiff's obstreperous conduct has hampered this Court's docket and has required extraordinary time and attention that could have been spent on other litigants who show more respect for the judicial process." *Id.* Further, Plaintiff's rejection of the Court's authority amounts to a refusal to be heard. Thus, this factor weighs in favor of dismissal.

9

Fifth, the Court has imposed monetary sanctions, (*see* ECF Nos. 57, 63), but these sanctions do not appear to have had any effect on Plaintiff, as he has continued to engage in the same violative conduct following their imposition. The Court does not see how the case can move forward if Plaintiff refuses to recognize the authority of the Court and the authenticity of its orders. *See Houghtaling*, 2021 WL 6845540, at *7 (finding dismissal to be proper sanction where plaintiff declared the court's order as moot and showed no indication that he was willing to adhere to the court's previous orders); *see also Pugh v. Conecuh Cnty.*, No. 25-CV-14, 2025 WL 1561264, at *2-3 (M.D. Ala. Apr. 3, 2025) (dismissing case due to plaintiff's failure to comply with court orders because court "cannot proceed without Plaintiff's compliance with court orders," and finding monetary sanction insufficient to secure compliance where plaintiff "already demonstrated he cannot or will not comply"), *report and recommendation adopted*, 2025 WL 1557278 (M.D. Ala. June 2, 2025), *appeal dismissed*, No. 25-12035, 2025 WL 2618997 (11th Cir. Aug. 20, 2025). The Court has tried to address Plaintiff's concerns, both in written orders and at the pre-motion conferences, but Plaintiff has failed to listen and participate in the case. In short, there is nothing more the Court can do. Thus, this factor also weighs in favor of dismissal.

### III. CONCLUSION

For the foregoing reasons, the case is dismissed pursuant to Federal Rule of Civil Procedure 41(b). In an excess of caution, in light of Plaintiff's *pro se* status and the Court's doubts as to whether it has subject matter jurisdiction, the dismissal is without prejudice. The Clerk of Court is respectfully directed to terminate any pending motions and close the case.

**SO ORDERED.**

Dated: September 17, 2025
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.